UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
|
PINIKA, LLC,                                 |    Case No. 1:07-cv-826
|
    Plaintiff,                              |    HONORABLE PAUL MALONEY
|
    v.                                       |
|
METLIFE, INC. (f/k/a Metropolitan Life Insurance |
Company),                                    |
|
    Defendant.                               |
_____

**Order**

**Ordering the Plaintiff to Provide Certain Documentary Evidence**

This is a diversity breach-of-contract action between two commercial entities. Plaintiff Pinika LLC is a Michigan corporation with its principal place of business in Michigan, while defendant MetLife, Inc., formerly known as Metropolitan Life Insurance Company ("Metlife") is a New York corporation with principal place of business in New York, and the amount in controversy is at least $343,367.72 plus contractual interest. *See* Comp. ¶¶ 1-2, 12 & 21; Ans. ¶¶ 1-3 (conceding jurisdiction). Metlife has moved for summary judgment, and the motion is fully briefed. For the reasons that follow, the court needs additional documentary evidence before ruling on the motion.

**Background**

Pinika developed and owned proprietary software for document imaging, archiving, retrieval, and tracking, and it provided web-hosting, implementation, processing, and operation services in connection with the operation of document-management systems.  *See* Comp. ¶ 4; Pinika's Opp at 3 (citing Ex. 3 ¶ 3).  Beginning in June 2000, the parties discussed Metlife's need for information retrieval and related services, and Metlife asked Pinika to start developing a system to meet its needs in that area.  Honoring the request, Pinika engaged in "testing, strategizing and extensive and costly technical preparations all at defendant's request and with defendant's input and knowledge" with the goal of a system that enabled Metlife to locate and access separate document images based on, among other criteria, employee names or social security numbers.  *See* Comp. ¶¶ 5-6; Pinika's Opp at 3 (citing Ex. 3 ¶¶ 4-6).

Pinika emphasizes that its document-retrieval software was originally designed for a database organized document-by-document.  In response to Metlife's "very specific" ongoing requests, however, Pinika extensively modified its software to accommodate information derived from separate documents with different dates "and distinct significance . . . ."  *See* Comp. ¶ 6; Pinika's Opp, Ex. 3 ¶ 10.  Pinika proposed an Image Viewing Application that "will allow users to scroll through a document, view number of pages within a document," and it offered to prepare documents for imaging by removing staples, paper clips, "sticky notes", and other impediments to document scanning.  *See* Comp. ¶ 6 (citing Ex 1, App C at 1).

In February 2001, Metlife and a company named Paladigm Systems, LLC ("Paladigm") entered into a Software Management, Web Hosting Services, and Document Management Services Agreement ("the agreement"), wherein Paladigm agreed to provide Metlife with, *inter alia*, services

for the "implementation, processing and operation of a document management system." *See* Comp. ¶¶ 7-8 and Pinika's Opp at 4-5 (citing Ex 1 at 1). The agreement defined "documents" to mean "any and all documents provided to Paladigm by Client for Document Management Services under this Agreement." Comp. ¶ 8 (quoting Ex 1, Agreement § 36.17) or MSJ at 6 (quoting same).

The agreement obligated Metlife to provide "a minimum annual requirement of 1,000,000 Documents ('Minimum Annual Requirement')." Comp. ¶ 9 and Pinika's Opp at 5 (quoting Ex 1, Agreement ¶ 2.2(a)); *accord* MSJ at 6. The agreement specified that "For the sake of clarity, 'document' may be one or more pages in length and each one-sided page of a Document which is digitized hereunder shall constitute one image." Comp. ¶ 11 and Pinika's Opp at 5 (citing Ex 1 § 36.17). Pinika stresses that the minimum annual document requirement was essential, and that it comported with its method, which was to base its identifying criteria on separate *documents*, not separate pages per se. Comp. ¶ 10 and Pinika's Opp at 6.

In the first full calendar year of the Paladigm-MetLife agreement, 2001, MetLife met the 1,000,000-document annual requirement. By contrast, in years two and three of the agreement, Metlife provided 294,844 and 853,541 documents, respectively, Comp. ¶ 11 – a total of 1,148,385 documents rather than the 2,000,000 documents required by the Agreement.

In the documents Metlife provided to Pinika in those two years, there was an average ratio of 2.3 images per document. Applying that ratio, Pinika reasons that if Metlife had tendered the additional 851,615 documents, they likely would have contained an additional 678,141 images in year two, and an additional 1,963,144 images in year three.[1] Comp. ¶ 11. Paragraph 2.1(b) of the

---

[1] In year two, an additional 294,844 documents containing 2.3 images each would have yielded 678,141.2 additional images.

Agreement required Metlife to pay a Document Management Services Fee of $0.13 per image, *see* MSJ at 6, so the Metlife had tendered documents containing those 2,641,285 images in years two and three, it would have paid approximately an additional $343,367.  Comp. ¶¶ 11 & 17 -18 and Ex 1 (Agreement) ¶ 2.1(b) and Ex. 2 (Damage Calculations).

By letter dated January 7, 2003, Metlife's Vice-President of National Accounts, Detroit Division, Robert C. Love, informed Paladigm that it was ending the agreement effective on or about May 7, 2003:

> Reference is made to the Software License, Web Hosting Services and Document Management Services Agreement dated as of January 22, 2001 between Paladigm Systems, L.L.C. ("Paladigm") and . . . MetLife . . . .  Pursuant to Section 11.10 of the Agreement, MetLife hereby terminates the Agreement as of four months from Paladigm's receipt of this termination notice.
>
> Pursuant to the provisions of the same section, Metlife shall pay an early termination fee to Paladigm of 20% of the Applicable Hosting & Maintenance Fee per month for each month remaining of the Initial Term of the Agreement.
>
> Upon the fulfillment of Paladigm's obligations pursuant to Section 11.5 of the Agreement, i.e. assisting MetLife in the orderly termination of the License Agreement, including the transfer of all property (included but not limited to, images), keeping NBCdocs.com website hosted by Paladigm running, and reasonable termination/expiration assistance to MetLife and MetLife's designees, MetLife shall send a check for the amount of the applicable early termination fee to you, unless informed in writing to send it to another person.

MSJ, Ex. C at 1; *see also* Affidavit of Robert C. Love dated March 5, 2008 ("Love Aff.") ¶ 5; *cf.* Comp. ¶¶ 13 & 19 (alleging that Metlife gave notice of termination in February 2003).  Agreement § 11.10, Termination for Convenience, authorized Metlife to terminate the Agreement "and/or any of the Services being provided under this Agreement at any time for the convenience of CLIENT

---

In year three, an additional 853,541 documents containing 2.3 images each would have yielded 1,963,144.3 additional images.

[Metlife] by giving PALADIGM at least three (3) months' prior written notice designating the termination date."

On an unspecified date, Metlife paid Paladigm $9,720 as an early-termination fee. MSJ Ex. D, Affidavit of MetLife Account Executive Michael Willey dated Mar. 4, 2008 ("Wiley Aff") ¶ 5 and attached Paladigm Invoice dated July 28, 2003.

In addition, in July 2003, Metlife paid Paladigm $13,390 "prorated for four (4) months at the rate of $0.013 per document, representing 347,000 documents . . ." MSJ Ex. D, Willey Aff ¶ 6.

Pinika maintains that the agreement's Termination for Convenience provision did not excuse Metlife from its obligation to provide one million documents per year as required by paragraph 2.2(a), *see* Comp. ¶¶ 13 & 19 and Pinika's Opp at 2.

Although MetLife's January 7, 2003 letter terminated the agreement effective about May 7, 2003, Pinika alleges that Paladigm continued to provide services through June 15, 2003. *See* Pinika's Opp at 2 and 7 (quoting Ex. 3, Declaration of Patrick Lemon, ¶ 15).

In June 2005, Paladigm executed an agreement that transferred to Pinika's alleged predecessor, Kendale Finance LLC, all the assets used "in a document and information management and services business formerly operated by Paladigm . . . ." Pinika's Opp, citing Ex. 4 (Paladigm-Pinika Asset Sale Agreement dated June 30, 2005) and Ex. 2 (Declaration of Pinika's sole owner Kim Allen) ¶ 2. The Paladigm-Kendale agreement expressly defined the "purchased assets" to include the receivables due from MetLife. Pinika's Opp, Ex 4 at 1 and 33. MetLife's reply brief concedes that "[v]iewing the facts in the light most favorable to the Plaintiff, it may have purchased the assets of Paladigm," MetLife Reply at 2, but the record does not yet compel the court to reach

that conclusion.

**Procedural History**

On July 30, 2007, Pinika served a complaint and summons on MetLife initiating Civil Case No. 07-07433-CK in the Circuit Court of Kent County, Michigan. *See* Removal Notice ¶ 1. Pinika asserts a New York common-law claim for breach of contract, as well as breach of the covenant of good faith and fair dealing. Comp. ¶ 20 (citing RESTATEMENT OF CONTRACTS 2D § 205 & comment d (1981)). Pinika seeks recovery of $343,367.22, plus interest pursuant to the Agreement § 2.1(f), and it demands a jury trial. Comp. ¶ 21 and Comp. at 8 (Jury Demand). On August 23, 2007, MetLife timely filed a notice removing the case to this court based on diversity jurisdiction. *See* Removal Notice ¶¶ 2 and 4-5.

On September 27, 2007, MetLife timely filed an answer that denies nearly every factual allegation of the complaint and asserts seven affirmative defenses. Metlife's answer contends that Pinika's claim fails because there was no privity of contract between the parties; is barred by the Statute of Frauds and is untimely under the applicable statute of limitations; fails to state a claim on which relief can be granted; and is barred by payment and/or release; is barred by the doctrines of waiver and estoppel. *See* Ans. at 5-6. Metlife has not counterclaimed and does not contend that Pinika breached the Agreement.

In March 2008, MetLife filed a motion for summary judgment [Dkt. #22]. Pinika filed an opposition brief in April 2008 [Dkt #34], and MetLife filed a reply brief in May 2008 [Dkt #38].

Metlife maintains that it never had a contractual relationship with Pinika, only with Paladigm, and is not in privity of contract with Pinika. *See* MSJ Ex. C (Love Aff) ¶ 4 and Ex. D (Willey Aff) ¶ 4. Metlife's opening motion brief pointed out that

> [a]lthough Pinika has attached a copy of the contract between Metlife and Paladigm, it has failed to attach any evidence that it is a proper assignee or successor to the rights of Paladigm. * * * MetLife has requested through discovery requests, and informally, documents evidencing such an assignment or proof of Pinika's interests as a successor [to Paladigm with respect to the Paladigm-MetLife contract].

MSJ at 8-9. MetLife contended that under New York law, a non-party to a contract may not sue under the contract without presenting evidence that a contracting party made a valid assignment of its rights thereunder. *See* MSJ at 9 (citing *Bank of Tokyo-Mitsubishi v. Kvaemer A.S.*, 234 A.D.2d 1, 7-8 (N.Y. App. Div. 1998)). Pinika's opposition brief addressed part of this concern by attaching a copy of the Asset Sale Agreement that transferred Paladigm's assets (including its right to collect receivables from MetLife under the instant contract) to Kendale Finance LLC ("Kendale") (Pinika's alleged predecessor) on June 30, 2005. *See* Pinika's Opp at 8 and Ex. 4 ¶ 2.

It appears, however, that the record does not include evidence showing the transfer of the MetLife contract receivables from Kendale to Pinika, which must have occurred (if at all) on or after June 30, 2005 (the date Kendale acquired that asset from the original contracting party, Paladigm).

## ORDER

Accordingly, the plaintiff **SHALL FILE, no later than Monday, June 23, 2008,** a copy of the document(s) which it contends transferred Kendale Finance LLC's interest (in the Metlife-Paladigm contract's receivables) from Kendale Finance LLC to the plaintiff.

**IT IS SO ORDERED this 12th day of June 2008.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
United States District Judge